UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MICHAEL ROGERS,

             Plaintiff,

    – against –

POLICE OFFICER JAMAAL MILLER,
POLICE OFFICER MICHAEL IOVINE, and
THE CITY OF NEW YORK,

             Defendants.
------------------------------------------------------------ X

**MEMORANDUM DECISION
AND ORDER**

16-CV-03610 (AMD) (VMS)

**ANN M. DONNELLY**, United States District Judge:

On July 1, 2016, the plaintiff, Michael Rogers, brought this *pro se* action[1] alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and various state claims.[2] (ECF No. 1.) The defendants moved for summary judgment on August 31, 2018. (ECF No. 67.) For the reasons that follow, I grant the defendant's motion for summary judgment on the plaintiff's constitutional claims and decline to exercise jurisdiction over the plaintiff's state law claims.[3]

## BACKGROUND[4]

The plaintiff's lawsuit is premised on a series of interactions with the defendant police officers in 2013, ultimately leading to his arrest on August 16, 2013. (ECF No. 70-2 at 19:16-

---

[1] The plaintiff served an amended complaint on January 12, 2018. (ECF No. 49.)
[2] The plaintiff claims deprivation of liberty, slander, defamation, intentional infliction of emotional distress, false arrest and imprisonment, battery, and malicious prosecution. (ECF No. 49 ¶ 17.)
[3] It appears that Officer Michael Iovine was never served with process. Nevertheless, the Court proceeds as if he had been served.
[4] Unless otherwise noted, the factual background is based on my review of the entire record. The defendant's Rule 56.1 statement of facts addresses only the alleged August 16, 2013 incident. (ECF No. 69.) The plaintiff filed a Rule 56.1 counter-statement of the facts. (ECF No. 73-1.) I construe the facts in the light most favorable to the plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Since the defendant filed a statement of undisputed facts only for the August 16, 2013 incident, I rely on the plaintiff's complaint and the record as a whole in determining the facts.

19:23.) According to the plaintiff, the officers engaged in a pattern of harassing behavior leading to multiple unconstitutional interactions. (*Id.* at 66:19-67:3.)

Officers Jamaal Miller and Michael Iovine first approached the plaintiff early one morning in May or June of 2013,[5] when the plaintiff was kissing his girlfriend on a street corner. (ECF No. 70-2 at 58:8-58:20.) The officers pulled up in their car, shined lights on the couple, and Officer Miller remarked to the plaintiff's girlfriend, "You could do better." (*Id.*) The plaintiff "cursed them out," and the officers drove away. (*Id.* at 59:16-59:20.) The plaintiff claims that he reported the incident by email to the New York Police Department Internal Affairs Bureau, (*Id.* at 67:20-68:24), but the defendants were unable to locate the complaint. (ECF No. 70-9 ¶ 8.)

The officers approached the plaintiff again on August 5, 2013, while the plaintiff was riding his bike on a one-way street against traffic. (ECF No. 70-2 at 59:21-60:20.) According to the plaintiff, Officer Miller stepped out of the car and said, "You like filing fucking complaints?" (*Id.* at 61:13-62:5.) The officers directed the plaintiff to place his hands on their car, and then searched him and his belongings. (*Id.* at 62:6-62:23.) The interaction lasted about five minutes, and the officers did not arrest the plaintiff, or give him a summons or ticket. (*Id.* at 65:15-65:22.) The plaintiff alleges that he reported the incident to the 79th precinct. (*Id.* at 74:24-75:2.)

About a week later, on August 16, 2013, the officers approached the plaintiff again, while he was sitting in the passenger's seat of a double-parked car, holding a cup of wine. (ECF No. 73-1 ¶¶ 2-7.) One of the officers ordered the plaintiff out of the car. (*Id.* ¶ 11.) Officer Iovine reported that he saw a bottle of wine on the floor of the car, which the plaintiff disputes.

---

[5] The plaintiff also says that he was arrested in January of 2013 for wearing a t-shirt (ECF No. 70-2 at 63:17-64:12), but the officers were not involved in that arrest. (*Id.*)

2

(*Id.* ¶ 13.) The plaintiff was arrested for possessing an open container in public. (ECF No. 70-4 at 2-4.)

According to the plaintiff, Officer Miller handcuffed him. (ECF No. 70-2 at 38:20-39:8.) When the plaintiff asked why he was being arrested and protested that the officer was violating his rights, Officer Miller told him to shut up. (*Id.* at 39:9-39:25.) A crowd gathered and also questioned the arrest. (*Id.* at 53:16-53:25.) The plaintiff alleges that the officers told the crowd that the plaintiff was "a drug dealing piece of shit." (*Id.*)

The plaintiff also claims that Officer Miller was "rough" when he put the plaintiff in the police car. (*Id.* 42:11-43:8.) The officer did not kick, punch, or hit the plaintiff, (*Id.* at 47:8-48:2), but he "swung," "threw," and "jammed" the plaintiff's legs into the seat.[6] (*Id.* at 42:20-43:24.) The defendants respond that Officer Miller did not participate in the plaintiff's arrest, and only drove the plaintiff to the station house. (ECF No. 68 at 13-14; ECF No. 70-8 ¶¶ 10-14.)

Officer Miller drove the plaintiff to the 79th precinct and placed him in a cell. (ECF No. 73-1 ¶¶ 14-15.) The officer directed the plaintiff to remove all of his clothing except his underwear, and then searched him. (ECF No. 70-2 at 49:14-50:14.) The plaintiff was released the next morning. (*Id.* at 51:15-51:18.) According to the plaintiff, the open container charge was dismissed. (*Id.* at 52:24-53:10.)

The plaintiff claims that he reported the August 16, 2013 incident to both the Internal Affairs Bureau and the Civilian Complaint Review Board. (*Id.* at 75:3-75:11.) The CCRB conducted an investigation, and the plaintiff spoke with a CCRB investigator on September 12, 2013. (*Id.* at 77:9-78:21; ECF No. 73-3 at 43.)

---

[6] I have also reviewed a series of CCRB interview summaries, which the plaintiff attached to his memorandum. These reports provide additional detail about the August 16, 2013 arrest.

3

The plaintiff alleges that the defendant officers stopped him again on August 25, 2013 and cursed him out, screaming about the plaintiff's complaint to the CCRB. (ECF No. 70-3 at 43:4-43:22; 45:22-46:15.) The officers did not get out of their car or search him. (*Id.* at 46:16-46:25.)

Following the plaintiff's August 16, 2013 arrest, the plaintiff claims that members of the Gates Avenue Mafia saw the arrest and suspected that the plaintiff was a drug dealer. (ECF No. 70-2 at 87:18-89:23.) They "inserted themselves into [his] life[,]" harassed him, and robbed him. (*Id.* at 92:16-100:11.) The plaintiff shot a member of the group. (*Id.* at 101:6-101:10.) He pleaded guilty to assault in the first degree and was sentenced to eight years in prison. (ECF No. 70-3 at 5:21-6:1.)

The plaintiff currently is incarcerated at Otisville Correctional Facility. He claims that "none of this stuff would be happening if it wasn't for" what the officers did, (ECF No. 70-2 at 99:15-100:11), and that the City has failed to "properly instruct[] or train[] their employees on people's civil rights and procedure, and allow[s police officers] to behave badly without fear of retribution." (ECF No. 70-3 at 38:18-39:4.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 453-54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the

4

outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted.") (quoting *Anderson*, 477 U.S. at 248). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

## DISCUSSION

Liberally construing the complaint,[7] the plaintiff alleges claims for unreasonable search and seizure, false arrest and imprisonment, malicious prosecution, excessive force, cruel and unusual punishment, equal protection, and First Amendment retaliation under 42 U.S.C. § 1983 and state law, as well as municipal liability under 42 U.S.C. § 1983. The plaintiff also alleges defamation and slander under state law. The defendants move for summary judgment on all of the plaintiff's claims.

---

[7] The court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests, especially when it alleges civil rights violations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Weixel v. Bd. of Educ. Of City of New York*, 289 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

I. Section 1983 Claims Against the Defendant Police Officers

The record does not support the plaintiff's Section 1983 claims against the individual police officers. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Ostroski v. Town of Southhold*, 443 F. Supp. 2d 325, 335 (E.D.N.Y. 2006) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)). The challenged conduct must (a) be attributable at least in part to action under the color of state law, and (b) deprive the plaintiff of a right guaranteed under the Constitution of the United States. *Id.* (citing *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).

While police officers performing their duties as officers act under the color of state law, *see Miron v. Town of Stratford*, 976 F. Supp. 3d 120, 135 (D. Conn. 2013) ("An official acts under color of state law for Section 1983 purposes when the official exercises a power possessed by virtue of state law and made possibly only because the wrongdoer is cloaked with the authority of state law."), the plaintiff's constitutional claims do not withstand the defendants' motion for summary judgment.

A. Unreasonable Seizures

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable . . . seizures." *U.S. v. Fuller*, No. 07-cr-276 (NGG), 2007 WL 3006081, at *1 (E.D.N.Y. Oct. 10, 2007) (citing *Calif. v. Acevedo*, 500 U.S. 565, 659 (1991)). "A seizure . . . requires '*either* physical force . . . *or*, where that is absent, *submission* to the assertion of [police] authority.'" *United States v. Heurtas*, 864 F.3d 214, 216 (2d Cir. 2017) (citations omitted) (alterations in original). Viewing the totality of the circumstances, a reasonable person would have to believe that he was not free to leave. *See*

*United States v. Sharpley*, 181 F. App'x 64, 65 (2d Cir. 2006) (summary order) (no seizure where the record did not suggest that the police officers' requests were coercive); *see also United States v. Mendenhall*, 446 U.S. 544, 544 (1980) ("[C]ircumstances that might indicate a seizure [include the] threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or a tone of voice indicating that compliance with the officer's request might be compelled."). Moreover, "[a]n investigatory stop is permissible" when it is "supported by reasonable suspicion." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 429 (E.D.N.Y. 2012) (citing *Ornelas v. United States*, 517 U.S. 690, 693 (1996)).

As an initial matter, the encounter in May or June of 2013 was not a seizure. According to the plaintiff, the officers approached him while he was with his girlfriend. (ECF No. 70-2 at 58:8-58:20.) They did not get out of their car or question the plaintiff. (*Id.* at 59:14-59:17.) Rather, the plaintiff says that one of them told his girlfriend that she could "do better," that the plaintiff "cursed them out," and the officers left. (*Id.* at 59:16-59:20.) There was no seizure under the Fourth Amendment.[8]

The alleged stops on August 5, August 16, and August 25, 2013 were supported by reasonable suspicion. Reasonable suspicion of a traffic violation provides a sufficient basis for police officers to make a traffic stop. *United States v. Potter*, 551 F.3d 187, 188 (2d Cir. 2009). On August 5 and August 25, 2013, the plaintiff admits that he was riding his bike the wrong way on a one-way street. (ECF No. 70-2 at 55:15-55:20; ECF No. 70-3 at 45:15-45:19.) On

---

[8] The plaintiff filed this action on July 1, 2016 – over three years after the alleged May or June 2013 incident. Thus, any claim related to the alleged incident of May or June 2013 is barred by the three-year statute of limitations for Section 1983 claims. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations") (internal citations omitted).

August 16, 2013, the plaintiff was sitting in a double-parked car, drinking wine. (ECF No. 73-1 ¶ 3.) The biking incidents are traffic violations in New York, as was the double-parked car, and the plaintiff violated the open container law by drinking wine. The officers had reasonable suspicion to stop the plaintiff.

The defendants' motion for summary judgment is granted on these claims.

### B. Unreasonable Searches

The plaintiff alleges two searches by the defendants: a frisk on August 5, 2013 when the plaintiff was riding his bike, and a search following his arrest on August 16, 2013. The Fourth Amendment protects people from unreasonable searches. *Fuller*, 2007 WL 3006081, at *1 (citing *Acevedo*, 500 U.S. at 659). A warrantless search is valid when it is based on probable cause. *United States v. Howard*, 489 F.3d 484, 491 (2d Cir. 2007) (citation omitted). The search-incident-to-arrest doctrine is an exception to the general requirement for probable cause. *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017) (citing *Riley v. Calif.*, 573 U.S. 373, 382 (2014)).

The August 16, 2013 search following the plaintiff's arrest was justified as incidental to his arrest. Police officers may search a detainee "during the intake process even when the detainee is charged with a minor offense, and even in the absence of reasonable basis to suspect that the detainee is concealing a weapon or contraband." *Ashley v. City of New York*, No. 14-cv-5559 (NGG), 2017 WL 9487192, at *9 (E.D.N.Y. Apr. 17, 2017) (citing *Florence v. Bd. of Chosen Freeholders of the Cty. Of Burlington et al.*, 566 U.S. 318, 330-334 (2012)), adopted by *Ashley v. City of New York*, No. 14-cv-5559 (NGG) (SMG), 2017 WL 2972145 (E.D.N.Y. Jul. 12, 2017).

The plaintiff was searched at the precinct. (ECF No. 70-2 at 48:6-48:9.) While the plaintiff claims he was strip searched, he was not asked to, and did not remove, his underwear. (*Id.* at 50:10-50:14.) Thus, the search was not a strip search, *Kelsey v. Cnty. of Schoharie*, 567 F.3d 54, 62 (2d Cir. 2009) ("The term 'strip search' is used generally to describe any inspection of the naked body."), and even if it was, such a search is permitted during the intake process. *Ashley v. City of New York*, 2017 WL 9487192, at *9 (finding strip search constitutional as part of the intake process at a police precinct following a detainee's arrest).

The record is sparse on the August 5, 2013 frisk. The officers deny any interaction with the plaintiff that day. (ECF No. 68 at 13.) Other than the plaintiff's testimony, there is no record that the plaintiff complained to the precinct, and there are no other witnesses to the search. (ECF No. 70-2 at 66:12-66:14.) The plaintiff says the entire interaction lasted about five minutes. (*Id.* at 65:17-65:19.) Nevertheless, assuming the frisk occurred, the defendant officers are entitled to qualified immunity. *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) ("Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"); *see also Diaz*, 854 F.3d at 208-09 (officers may search a plaintiff they had probable cause to arrest for a traffic violation so long as the search occurs before the traffic stop is completed through issuance of a citation).

The defendant's motion for summary judgment on the plaintiff's unreasonable search claims is granted.

## C. False Arrest and False Imprisonment

The plaintiff's false arrest and imprisonment claims fail because the officers had probable cause to arrest him on August 16, 2013. "In New York, the claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the § 1983 context."[9] *Slack v. City of Suffolk*, 50 F. Supp. 3d 254, 263 (E.D.N.Y. 2014) (citing *Ostroski*, 325 F. Supp. 3d at 334)). The plaintiff must claim that the defendant intentionally confined him without his consent and without justification. *Peterec v. City of New York*, No. 14-cv-309 (RJS), 2015 WL 1027367, at *2 (S.D.N.Y. Mar. 6, 2015) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Probable cause is a complete defense to an action for false arrest. *Id.* (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

Probable cause supported the plaintiff's arrest and detention. Officer Iovine first approached the plaintiff when he was sitting in a double-parked car. *See People v. Guzman*, 913 N.Y.S.2d 151, 151-52 (2010) ("[T]he arresting officer, based on her direct observations, reasonably concluded that defendant's car was double-parked, warranting the immediate stop of the car for that infraction.") (citations omitted). He observed the plaintiff holding a clear cup of liquid, smelled alcohol from the plaintiff and cup, and saw an open bottle of wine on the floor. *See United States v. Diaz*, 122 F. Supp. 3d 165, 173 (S.D.N.Y. 2015) (probable cause for arrest when an officer observed the plaintiff holding a cup of clear liquid and smelled alcohol). The plaintiff counters that the officer did not smell alcohol, and that there was no bottle of wine in

---

[9] The plaintiff also alleges detention without legal process (ECF No. 49 at 4) which is part of the broader tort of false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 390 (2007) ("[F]alse imprisonment consists of detention without legal process . . . .").

the car, (ECF No. 73-1 ¶¶ 10, 12), but he admits that the cup contained wine,[10] (*Id.* ¶ 6), and offers no evidence that it did not smell of alcohol. *See Rotsbergs v. Guerrera*, No. 10-cv-1423, 2012 WL 1204729, at *5 (D. Conn. Apr. 11, 2012) (crediting the defendant's claim on summary judgment that he smelled marijuana despite contrary assertion by the plaintiff, in part, because there was marijuana in the car); *see also United States v. Hooks*, No. 10-cr-934 (RPP), 2011 WL 102726, at *6 (S.D.N.Y. Jan. 6, 2011) (probable cause for arrest under open container law where the plaintiff admitted the cup contained alcohol). Thus, the officers had probable cause to arrest the plaintiff.[11]

### D. Malicious Prosecution

Similarly, the plaintiff's malicious prosecution claim must be dismissed because the officers had probable cause. A § 1983 malicious prosecution claim requires the plaintiff to "establish the elements of a malicious prosecution claim under state law as well as sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 389 (E.D.N.Y. 2013) (citations and alterations omitted). Under New York law, a claim for malicious prosecution requires: "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d

---

[10] The plaintiff contends that the wine was pinot grigio and contained "less than (.005) percent of alcohol by volume" (*Id.* ¶ 6; ECF No. 70-3 at 37:17-37:18), but offers no evidence to support this assertion.
[11] The defendants also assert that the officers are entitled to qualified immunity from the plaintiff's claims related to his stops and arrest. An officer is entitled to qualified immunity when "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Ostroski*, 443 F. Supp. 2d at 338 (citations omitted). Accordingly, even if the Court were to conclude that the officers lacked probable cause to stop or arrest the plaintiff, it was objectively reasonable for them to believe that probable cause existed, and that they would be entitled to qualified immunity.

149, 161 (2d Cir. 2010) (quoting *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir. 1997) (internal quotation marks omitted)).

The plaintiff has provided no evidence and does not argue that the probable cause "justifying [his] arrest was dissipated through the discovery of some intervening fact after the arrest." *Oquendo v. City of New York,* 14-cv-2582 (ENV) (RLM), 2017 WL 6729850, at *5 (Nov. 15, 2017). The plaintiff admits that his cup contained wine. Thus, the Court grants summary judgment on the plaintiff's malicious prosecution claim in favor of the defendant.

### E. Excessive Force, Assault, and Battery

The plaintiff's excessive force, assault, and battery claims also fail because he suffered no injury from the arrest. A police officers' use of force is unconstitutionally excessive "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of N.Y.,* 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)); *see also Pierre-Antoine v. City of New York,* No. 04-cv-6987 (GEL), 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) ("[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim.") (internal citations and quotation omitted).

Because the test is one of "objective reasonableness," the inquiry is fact-specific. *Tracy v. Freshwater,* 623 F.3d. 90, 96 (2d Cir. 2010) (citing *Bryant v. City of New York,* 404 F.3d 128, 136 (2d Cir. 2005)). "'[N]ot every push or shove' is unconstitutionally excessive, 'even if it may later seem unnecessary in the peace of a judge's chambers.'" *Hodge v. Village of Southhampton,* 838 F. Supp. 2d 67, 75 (E.D.N.Y. 2012) (citing *Maxwell,* 380 F.3d at 108); *see also Pittman v. City of New York,* No. 14-cv-4140 (ARR) (RLM), 2014 WL 7399308, at *9 n.12

(E.D.N.Y. Dec. 30, 2014) ("[T]he fact that the officers approached the cars with their guns drawn does not support a claim of excessive force."). Instead, the court must analyze the "totality of the circumstances, 'including the severity of the crime at issue, whether the suspect posed a treat an immediate threat to the safety of others, and whether he is actively resisting arrest.'" *Id.* (citing *Graham*, 490 U.S. at 396).

The plaintiff claims that Officer Miller was "rough" with him, and got him into the police car by "swinging" and "jamming" his legs into the seat.[12] (ECF No. 70-2 at 42:20-43:24.) The officers did not kick, punch, or hit the plaintiff during the arrest, (*Id.* at 47:8-48:2) and the plaintiff did not report any physical injuries.[13] (*Id.* at 83:9-83:12.)

The defendants also claim that Officer Miller was not involved in the plaintiff's arrest. (ECF No. 68 at 20.) In any event, there is no triable excessive force claim. The plaintiff was not injured, so the defendant's motion for summary judgment is granted. *See Vializ v. Crespo*, No. 3:12-cv-724 (RNC), 2017 WL 1234097, at *3 (D. Conn. Mar. 31, 2017) (no triable claim with regarding to alleged use of excessive force because the plaintiff alleged no injuries); *see also Arnold v. Westchester Cnty.*, No. 09-cv-3727 (JSR) (GWG), 2012 WL 336129, at *7 (S.D.N.Y. Feb. 3, 2012) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("[A] push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim.")).

### F. Cruel and Unusual Punishment

The plaintiff also did not plead an actionable cruel and unusual punishment claim. "[T]he Eighth Amendment's protection does not apply 'until after conviction and sentence.'" *Mayer v. City of New Rochelle*, No. 01-cv-4443 (MBM), 2003 WL 21222525, at *8 (S.D.N.Y.

---

[12] The plaintiff told the officer that he would "fuck[] him up." (*Id.* at 46:2-46:14.)
[13] The plaintiff asserts general emotional distress stemming from all of his interactions with police in 2013. (*Id.* at 83:13-83:19.)

May 27, 2003) (citing *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). "Incarceration does not constitute cruel and unusual punishment." *McClinton v. Henderson*, No. 13-cv-3335 (JFB) (GRB), 2014 WL 2048389, at *6 (E.D.N.Y. May 19, 2014). Instead, "only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment." *Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (E.D.N.Y. 1994)).

Although the basis for the plaintiff's cruel and unusual punishment claim is not especially clear, there is no evidence that he was injured while in police custody or that the police were deliberately indifferent to a risk of harm to the plaintiff. Accordingly, the defendants' motion for summary judgment is granted with respect to the plaintiff's cruel and unusual punishment claims.

### G. Equal Protection

The plaintiff's equal protection claim fails because he did not allege or proffer any evidence that he was treated differently than other similarly situated individuals. A selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment requires that a plaintiff's treatment differ from other similarly situated individuals, and that the treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Peterec*, 2015 WL 1027367 at *5 (citing *Five Borough Bicycle Club v. City of New York*, 684 F. Supp. 2d 423, 438 (S.D.N.Y. 2010)); *see also Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) (in order to establish an equal protection violation under § 1983, "it is axiomatic that plaintiff must allege that similarly situated persons were treated differently."); *see also DeVito v. Barrant*, No. 03-cv-1927 (DLI) (RLM), 2005 WL 2033722, at *6 (E.D.N.Y. Aug. 23, 2005) (dismissing § 1983 equal protection claim because, among other things, the plaintiff did

not allege that he was treated differently than other similarly situated people). Consequently, summary judgment is granted in favor of the defendants with respect to plaintiff's equal protection claim.

### H. First Amendment Retaliation

A liberal reading of the complaint includes a possible claim for First Amendment retaliation. A First Amendment retaliation claim requires that the plaintiff had an interest protected by the First Amendment, that the defendants' actions were motivated or substantially caused by his exercise of that right, and that the defendants' actions effectively chilled the exercise of his First Amendment right. *Udechukwu v. City of New York*, 333 F. Supp. 3d 161, (E.D.N.Y. 2018) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citation omitted)).

The plaintiff claims that on two occasions – August 5, 2013 and August 25, 2013 – the officers berated him about his complaints to the CCRB. As previously discussed, the officers had reasonable suspicion to stop the plaintiff on both days; the plaintiff admits that he was riding his bike on a one-way street against traffic. Since the stops were constitutional, the officers' actions were not substantially caused by the plaintiff's complaints. *See Mangino v. Inc. Vill. Of Patchogue*, 956 (2d Cir. 2015) (citations omitted) ("The existence of probable cause will defeat a . . . First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence him.") (alterations omitted); *see also Anderson v. City of New York*, 817 F. Supp. 3d 77, 96 (E.D.N.Y. 2011) ("If the officer had probable cause or arguable probable cause to arrest the plaintiff, 'then we will not examine the officer's underlying motive.'") (citations omitted).

Even if the officers had stopped the plaintiff because of his complaints to CCRB, he continued to file complaints and participate in the CCRB investigation process, which shows that that his First Amendment rights were not chilled. The plaintiff reported the August 5, 2013 stop to the precinct. He complained to the CCRB and IAB following his August 16, 2013 arrest. After the plaintiff's August 25, 2013 stop, the plaintiff went to his CCRB interview in September of 2013. He never withdrew a complaint, and never waivered in his commitment to the CCRB investigation. Thus, his speech was not effectively chilled. *See Ford v. Reynolds*, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004) ("Because Plaintiffs have failed to allege any actual chill or deterrence, this Court must conclude that [Plaintiffs] did not suffer the harm necessary to support their retaliation claim."), *aff'd*, 167 F. App'x 248 (2d Cir. 2006).

## II. Section 1983 Claims Against the City

The plaintiff's municipal liability claim is dismissed because the plaintiff has failed to proffer any evidence that there was a policy, custom, or practice connected to the defendant officers' alleged unconstitutional acts. A municipality cannot be liable under § 1983 for constitutional torts committed by its employees under a *respondeat superior* theory. *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006) (citing *Zahra v. Town of Southhold*, 48 F.3d 674, 678 (2d Cir. 1995)). Instead, the plaintiff must demonstrate that his injury resulted from a municipal policy, custom, or practice. *Johnson v. City of New York*, No. 16-cv-2879 (PKC) (LB), 2019 WL 2393716, at *5 (E.D.N.Y. June 6, 2019) (citing *Monell v. N.Y.C. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)).

In his deposition, the plaintiff claimed that the City has failed to "properly instruct[] or train[] their employees on people's civil rights and procedure, and allow[s police officers] to behave badly without fear of retribution." (ECF No. 70-3 at 38:18-39:4.) He points to a New

16

York Criminal Court case, *People v. Figueroa*, 948 N.Y.S.2d 539 (2012), in which the judge recommended that the NYPD review its enforcement of open container laws for discriminatory impact. *Id.* at 609.

For the reasons previously stated, the officers' conduct was not unconstitutional. Thus, the plaintiff's *Monell* claim fails as a matter of law. *See Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014) ("Because he has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to *Monell* . . . must also fail.").

Even if there were a constitutional violation, the plaintiff did not meet his burden to sustain a *Monell* claim. While "municipal inaction such as the persistent failure to discipline subordinates who violate persons' civil rights could give rise to an inference of an unlawful municipal policy or ratification of unconstitutional conduct," *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), the record does not demonstrate an unlawful policy. The plaintiff's reference to a single case questioning open container law enforcement in New York City does not establish a pattern of unlawful law enforcement, excessive force, or unreasonable search and seizure. *See Ostroski*, 443 F. Supp. 2d at 345-46 (citing *Clerical Apparel of N.Y., Inc. v. Valley Forge Ins. Co.*, 209 F.R.D. 316, 319-20 (E.D.N.Y.2002) ("[A]n affidavit filed by 'the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight.'")). Moreover, the Criminal Court judge's "personal observations[,]" "other anecdotal evidence[,]" and informal review of a month's worth of summonses simply cannot assist a fact-finder in determining whether there is a pattern of widespread misconduct. *Figueroa*, 948 N.Y.S.2d at 542; *see also Ostroski*, 443 F. Supp. 2d at 346 (the mere fact that a number of lawsuits has been filed, without any information as to whether the suits are meritorious or spurious, or alternatively, any evidence that the

municipality ignored such complaints . . . does not assist a fact-finder in determining whether the Town . . . actually had a historical problem . . . ."). The defendant's motion for summary judgment on the plaintiff's *Monell* claim is granted.

### III. Remaining State Law Claims

The Court interprets the plaintiff's remaining claims, including his claims for intentional infliction of emotional distress and defamation, as state law claims. Because all of the federal claims have been dismissed, I decline to exercise supplemental jurisdiction over the remaining state claims. *See Bennett v. Care Corr. Sol. Med. Contr.*, 15-cv-3746 (JCM), 2017 WL 1167325, at *10 (S.D.N.Y. Mar. 24, 2017) (declining supplemental jurisdiction over negligence, malpractice, negligent infliction of emotional distress, and defamation claims); *see also Morse v. Nelson*, No. 3:08-cv-1757 (SRU), 2010 WL 466157, at *5 (D. Conn. Feb. 9, 2010) (declining supplemental jurisdiction over slander and defamation claims where all federal claims have been dismissed). The plaintiff's state claims are dismissed without prejudice.

### CONCLUSION

For the reasons explained above, I grant the defendant's motion for summary judgment on the plaintiff's constitutional claims, decline to exercise jurisdiction over the plaintiff's remaining state law claims, and dismiss the plaintiff's state law claims without prejudice. The Clerk of the Court is respectfully directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

                                                s/Ann M. Donnelly
                                          _____
                                          Ann M. Donnelly
                                          United States District Judge

Dated: July 30, 2019
       Brooklyn, New York